IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER R. PESTOK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 09-573 |
| | ) Chief Judge Lancaster |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

<u>MEMORANDUM OPINION AND ORDER OF COURT</u>

Gary L. Lancaster,
Chief Judge                                        March 24, 2010

## I. Introduction

Plaintiff Jennifer R. Pestok ("Pestok") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433 and 1381-1383(f)]. For the reasons that follow, the decision of the Commissioner will be vacated, and the case will be remanded to him for further administrative proceedings consistent with this opinion.

## II. Procedural History

Pestok protectively applied for DIB and SSI benefits on June

1

27, 2006, alleging disability as of November 21, 2005. (R. at 83, 87, 110). The applications were administratively denied on December 22, 2006. (R. at 61, 66). Pestok responded on January 31, 2007, by filing a timely request for an administrative hearing. (R. at 72). On April 29, 2008, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge Paul R. Sacks (the "ALJ"). (R. at 25). Pestok, who was represented by counsel, appeared and testified at the hearing. (R. at 27-51, 55-56). Tonya Shulow ("Shulow"), an impartial vocational expert, also testified at the hearing. (R. at 51-54). In a decision dated May 13, 2008, the ALJ determined that Pestok was not "disabled" within the meaning of the Act. (R. at 8-21). The Appeals Council denied Pestok's request for review on April 9, 2009, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 1). Pestok commenced this action on May 8, 2009, seeking judicial review of the Commissioner's decision. (Doc. No. 1). Pestok and the Commissioner filed motions for summary judgment on August 26, 2009, and November 19, 2009, respectively. (Doc. Nos. 8 & 12). These motions are the subject of this memorandum opinion.

### III. Standard of Review

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's

decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments

are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic

4

work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

5

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## IV. Discussion

In his decision, the ALJ determined that Pestok had not engaged in substantial gainful activity subsequent to her alleged onset date. (R. at 13). Pestok was found to be suffering from asthma, gastroesophageal reflux disease ("GERD"), an iron deficiency, depression, bulimia nervosa and anxiety. (R. at 13). Her asthma, GERD and iron deficiency were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii), while her depression, bulimia nervosa and anxiety were deemed to be "non-severe." (*Id.*). The ALJ concluded that Pestok's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). (R. at 14-15). In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ determined that Pestok had the residual functional capacity to perform "the full range of light work" as defined in the Commissioner's regulations.[1]

---

[1] The regulations defining the term "light work" provide:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.

(R. at 15).

Pestok was born on September 1, 1969, making her thirty-six years old as of her alleged onset date and thirty-eight years old as of the date of the ALJ's decision. (R. at 20, 31). She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). Pestok graduated from high school and studied theater at Indiana University of Pennsylvania for two years. (R. at 34). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Pestok could not return to her past relevant work as a cashier, medical record coder, or cleaner. (R. at 20). Nevertheless, the ALJ determined that a finding of "not disabled" was directed by Medical-Vocational Rule 202.21, which is contained in 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Medical-Vocational Guidelines" or, with respect to a single guideline, a "Rule"). (R. at 20-21). In the alternative, the ALJ concluded that Pestok could work as a retail sales clerk, ticketer or garment sorter. (R. at 21). Shulow's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§

---

> Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

7

423(d)(2)(A) and 1382c(a)(3)(B). (R. at 53-54).

Pestok raises several arguments in support of her motion for summary judgment, all of which relate (directly or indirectly) to the ALJ's residual functional capacity determination and corresponding hypothetical question to Shulow. (Doc. No. 14, pp. 6-24). She vigorously contests the ALJ's determination that her mental impairments were not "severe," and his consequent determination that those impairments did not translate into work-related limitations. The record contains voluminous records concerning treatment that Pestok received at the Western Psychiatric Institute. (R. at 412-452, 509, 559-640). Her medical records contain extensive documentation of a major depressive disorder, an anxiety disorder, bulimia nervosa and panic attacks. (R. at 168, 174, 176, 233, 238, 246, 248-249, 252, 254-256, 378, 407, 409-411, 458-459, 480, 490, 504, 506, 519). In a letter dated February 22, 2007, Dr. Scott Starenchak ("Dr. Starenchak"), Pestok's primary care physician, stated as follows:

> Within a reasonable degree of medical certainty, Ms. Pestok appears physically able to return to work. However, I believe that her mental illness remains a considerable obstacle to long term employment. Since we usually do not provide the care for this and have limited documentation from Western Psychiatric and Clinic, I suggest evaluation from a mental health professional to determine disability related to her mental illness.

(R. at 608). Dr. Starenchak observed in his letter that Pestok had "a long history of anxiety and depression." (*Id.*).

Dr. Sharon R. Wilson ("Dr. Wilson"), a psychologist who performed a consultative examination of Pestok on September 14, 2006, concluded that Pestok had no more than "slight" limitations in her abilities to interact appropriately with supervisors and members of the general public and to respond appropriately to work pressures and changes in usual and routine work settings. (R. at 532). Dr. Raymond Dalton ("Dr. Dalton"), a nonexamining medical consultant, opined on October 4, 2006, that Pestok had only a "mild" degree of limitation in her maintenance of social functioning. (R. at 544). No other limitations were found. (*Id.*). Under the Commissioner's regulations, a "mild" degree of limitation resulting from an impairment warrants a finding that the impairment is not "severe." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). The ALJ credited the findings of Dr. Wilson and Dr. Dalton in concluding that Pestok's mental impairments did not result in specific work-related limitations. (R. at 17-20).

The United States Court of Appeals for the Third Circuit has referred to the second step of the sequential evaluation process as "a *de minimis* screening device" designed to quickly "dispose of groundless claims." *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546 (3d Cir. 2003). For this reason, an administrative law judge's invocation of the second step as a "basis for the denial of benefits" is "certain to raise a judicial eyebrow." *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 361 (3d

Cir. 2004). In this case, the second step was not invoked *as a basis for the denial of benefits*, since Pestok had other impairments which were deemed to be sufficiently "severe" to necessitate the continuation of the sequential evaluation process. (R. at 14). Moreover, the findings made by the ALJ at the second step of the process (like the findings made by the ALJ at all other steps of the process) are subject to the Act's deferential "substantial evidence" standard of review at this stage. *McCrea*, 370 F.3d at 360-361.

The crux of Pestok's argument is that the opinions of Dr. Wilson and Dr. Dalton are overwhelmed by evidence of functional limitations related to her mental impairments contained in the records supplied by her treating physicians. (Doc. No. 14, pp. 7-19). Dr. Starenchak, of course, viewed Pestok's mental condition as "a considerable obstacle to long term employment." (R. at 608). While it is not uncommon for treating and examining physicians to disagree as to whether a particular claimant's impairments are disabling, it is highly unusual for a consultative examiner to find that a well-documented combination of mental impairments results in no functional limitations at all. Under the Commissioner's regulations, even limitations resulting from "non-severe" impairments must be incorporated within the assessment of a claimant's residual functional capacity. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Because a remand for further

proceedings is required for reasons unrelated to Pestok's mental impairments, the Court need not determine whether "substantial evidence" supports the ALJ's finding that Pestok's mental impairments did not result in functional limitations. It suffices to say that the Commissioner should take a fresh look at Pestok's mental impairments during the upcoming proceedings.

Having reviewed the record in detail, the Court is convinced that further proceedings are required for two reasons. First, the ALJ's residual functional capacity assessment failed to incorporate environmental limitations which had been identified by Dr. Abu N. Ali ("Dr. Ali"), a nonexamining medical consultant, and which had not been negated by conflicting medical evidence. (R. at 550). Second, the ALJ's conduct of the hearing, while not sufficiently egregious to rise to the level of disqualifying bias, was nevertheless deficient enough to warrant a remand for further proceedings. These issues will be addressed in sequence.

The documentary record indicates that Pestok has a long history of pulmonary problems. She apparently suffered from pneumonia at the age of fourteen, and then again in 1993. (R. at 168). She was hospitalized at Ohio Valley General Hospital ("Ohio Valley") from May 14, 2004, through May 24, 2004, for pneumonia. (R. at 168-169). She had a second admission at Ohio Valley for pneumonia beginning on March 20, 2006, and ending on March 29, 2006. (R. at 233-235). The ALJ found Pestok's asthma to be

11

"severe." (R. at 14).

On October 20, 2006, Dr. Ali indicated that Pestok needed to "avoid even moderate exposure" to extreme cold temperatures, extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. (R. at 550). According to Dr. Ali, Pestok was *otherwise* capable of engaging in "light" work. (R. at 548-550). Dr. Ali observed in his consultative report that Pestok had taken "appropriate medications" for her pulmonary impairments, and that these medications had been "effective in controlling her symptoms." (R. at 552).

In his letter of February 22, 2007, Dr. Starenchak stated that Pestok's pneumonia had "resolved," and that her follow-up chest x-rays had been "normal." (R. at 608). At the hearing, Pestok testified that her asthma was "somewhat controlled by medication." (R. at 36). She responded affirmatively when asked by the ALJ whether she could "still do everything" from a physical standpoint, albeit at a relatively "slow" pace. (R. at 49). The ALJ determined that Pestok could engage in a *full range* of "light" work by stating as follows:

> In that same February 22, 2007 [sic], Dr. Starenchak also reported that the claimant's past bouts of pneumonia and her overall asthma have resolved, and he stated the claimant's reflux is controlled with Prevacid. He indicated no functional limitations stemming from the claimant's iron deficiency, noting that the claimant's blood counts are normal. Most significantly, Dr. Starenchak reported that, according to his office notes, the claimant's "follow up" with respect to her mental health care "has not been consistent," and he also opined

12

> "[w]ithin a reasonable degree of medical certainty [that the claimant] . . . appears physically able to return to work," again indicating that it is the claimant's depression, and not her physical health, that perhaps might otherwise interfere with the claimant's ability to work.
>
> Thus, the medical records and the claimant's testimony are consistent in reporting that the claimant's physical impairments are well-controlled with medication. However, given the claimant's diagnosed asthma, GERD and iron deficiency, as well as occasional indications in the medical records of related "fatigue" (Exhibit 7F, pp. 7, 18) and her hospitalization in March 2006 for pneumonia (Exhibit 3F), and as the State non-examining medical consultant below assessed the claimant as capable of performing light work (Exhibit 11F), I have interpreted the evidence in the light most favorable to the claimant in finding that she can perform no more than the exertional requirements of a full range of light work.

(R. at 17). As this passage indicates, the ALJ purported to rely on Pestok's testimony, as well as the opinions of Dr. Starenchak and Dr. Ali, in concluding that Pestok had no functional limitations aside from a generalized inability to perform work above the "light" level of exertion.

Dr. Starenchak indicated that Pestok's pulmonary impairments were not disabling, and that her asthma was controlled by medication. (R. at 608). Pestok testified that her asthma was "*somewhat* controlled by medication," and that her physical impairments did not completely preclude her from performing most work-related tasks. (R. at 36, 49)(emphasis added). Dr. Ali likewise found Pestok's "appropriate medications" to be "effective in controlling her symptoms." (R. at 552). Dr. Ali's finding that

13

Pestok could perform "light" work, however, was subject to the condition that she "avoid even moderate exposure" to extreme cold temperatures, extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. (R. at 550). Dr. Ali did not believe Pestok to be capable of engaging in a *full range* of "light" work. Although Dr. Starenchak indicated that Pestok's pulmonary impairments were not disabling, he did not contradict Dr. Ali's opinion that Pestok's capacity to engage in "light" work activity was reduced by environmental limitations. (R. at 608). Dr. Ali obviously believed that Pestok had environmental limitations *even though* her pulmonary impairments were controlled by medications. (R. at 550, 552). Thus, the statements given by Dr. Starenchak in his letter and by Pestok at the hearing concerning the effectiveness of the pulmonary medications were in no way inconsistent with Dr. Ali's view that Pestok *could not* engage in a "full range" of "light" work.

The Court acknowledges that an administrative law judge's residual functional capacity assessment need not incorporate every limitation *alleged* by a claimant, and that only *credibly established* limitations need be accounted for. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Nevertheless, an administrative law judge cannot reject a limitation that is established in the record based on *undisputed* evidence. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Since the

14

environmental limitations identified by Dr. Ali were uncontradicted, they should have been reflected in the ALJ's residual functional capacity determination.[2]

The ALJ concluded that a finding of "not disabled" was directed by application of Rule 202.21. (R. at 21). Alternatively, he concluded that Pestok could perform the duties of the jobs identified by Shulow. (*Id.*). Both of these findings are impugned by the ALJ's deficient residual functional capacity assessment. Because Pestok established the existence of nonexertional limitations, the Commissioner's burden at the fifth step of the sequential evaluation process could not have been satisfied by reference to Rule 202.21. *Sykes v. Apfel*, 228 F.3d 259, 269-270 (3d Cir. 2000). Furthermore, the Commissioner's burden could not have been satisfied by reference to Shulow's testimony, since the ALJ's hypothetical question did not incorporate Pestok's environmental limitations. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). Where a claimant has both exertional and nonexertional limitations, there is a

---

[2] Even if Dr. Ali's opinion that Pestok had environmental limitations had been contradicted by the opinion of another medical source, the ALJ would have had a duty to explain why he was not crediting Dr. Ali's opinion with respect to those limitations. *Reefer v. Barnhart*, 326 F.3d 376, 382 (3d Cir. 2003). The ALJ never acknowledged these limitations in his opinion. Instead, he proceeded on the erroneous assumption that Dr. Ali had found Pestok to be capable of engaging in a *full range* of "light" work. (R. at 17). In light of Pestok's pulmonary impairments, the evidence concerning her environmental limitations was not so lacking in probative value that it could have been implicitly rejected without explanation. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 203-205 (3d Cir. 2008).

particularly acute need for an accurate residual functional capacity assessment. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). The ALJ's incomplete assessment cannot stand.

The administrative proceedings in this case were defective for another reason. The ALJ severely limited the scope of examination by Pestok's attorney by refusing to permit inquiry into matters that were "covered in medical reports." (R. at 51). Although Pestok's counsel was allowed to briefly question Pestok about her sources of income, the ALJ abruptly ended the questioning as soon as the focus of the inquiry turned to matters concerning her daily activities and absences from her part-time job. (R. at 49-51). At a later point in the hearing, the ALJ permitted Pestok's counsel to ask only "one more" question about a statement submitted by a treating physician indicating that Pestok's mental impairments had rendered her disabled. (R. at 56). While an administrative law judge retains a reasonable degree of discretion to ensure that administrative proceedings are conducted in an efficient manner, the severe limitations placed on the scope of examination in this case essentially deprived Pestok of an opportunity to present testimonial evidence. In a case such as this, in which the report of a consultative examiner appears to conflict with documentary evidence contained in a claimant's treatment notes, the claimant's subjective complaints of potentially disabling limitations must be given serious consideration. *Mason v. Shalala*, 994 F.2d 1058,

1067-1068 (3d Cir. 1993). Because the limitations placed by the ALJ on the scope of inquiry by Pestok's counsel were so severe that they impeded the development of the testimonial record, a remand for further administrative proceedings would be required even if the ALJ had incorporated Pestok's environmental limitations into his residual functional capacity assessment. *Rosa v. Bowen*, 677 F.Supp. 782, 783-785 (D.N.J. 1988).

## V.  Conclusion

In light of the ALJ's deficient residual functional capacity assessment and the defective nature of the hearing, a remand for further administrative proceedings is required. Since a remand is required for other reasons, the Court has no occasion to consider whether "substantial evidence" supports the Commissioner's determination that Pestok had *no* mental limitations. It suffices to say that the effect of Pestok's mental impairments on her ability to work should be reconsidered during the course of the upcoming administrative proceedings. The Court expresses no opinion as to whether Pestok is "disabled" within the meaning of the Act.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER R. PESTOK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 09-573 |
| | ) Chief Judge Lancaster |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

<u>ORDER OF COURT</u>

AND NOW, this 24 day of March, 2010, IT IS HEREBY ORDERED that the Commissioner's motion for summary judgment (Doc.No. 12) is DENIED, and that Pestok's motion for summary judgment (Doc. No. 8) is DENIED insofar as it seeks an award of benefits but GRANTED insofar as it seeks a vacation of the Commissioner's administrative decision, and a remand for further administrative proceedings. Pursuant to the authority vested in this Court by the fourth sentence of § 405(g), the decision of the Commissioner is hereby vacated, and the case is remanded to him for further administrative proceedings consistent with this opinion.

BY THE COURT:

/s/ Gary L. Lancaster
Gary L. Lancaster,
Chief United States District Judge

cc:  All counsel of record